IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE EDWARD MELLON TRUST, by and ）
through Trustee, M. RICHARD MELLON, ）
                                        ）   No. 2:06-cv-0184
     Plaintiff/Counter-Defendant, ）

               v. ）   Judge Thomas M. Hardiman

UBS PAINEWEBBER, INC. and GARY ）
LYON OTTO, ）

     Defendants/Counter-Claimants. ）

## MEMORANDUM OPINION

### I.  Introduction

M. Richard Mellon (Mellon), the trustee of Plaintiff The Edward Mellon Trust (the Trust), filed this action on behalf of the Trust seeking to vacate a securities arbitration award (Award) entered in favor of Defendants UBS Painewebber, Inc. (UBS) and its broker, Gary Lynn Otto (Otto), after an arbitration conducted under the auspices of the National Association of Securities Dealers, Inc. (NASD). Defendants have counterclaimed, seeking confirmation of the Award. Additionally, Defendants have filed a Motion for Judgment on the Pleadings, reiterating their request for confirmation of the Award and seeking sanctions against Mellon.

After careful consideration of the pleadings and the record, the Court will deny Mellon's Motion to Vacate the Award, and will grant Defendants' Counterclaim to Confirm the Award. The Court also will deny Defendants' request for sanctions, and deny Defendants' Rule 12(c) motion.

## II.     Procedural History

Mellon initiated this action by filing a document captioned "Complaint in the Form of

Motion to Vacate Arbitration Award" (Motion or Mot.) along with a supporting memorandum

and exhibits on February 13, 2006.  On April 27, 2006, Defendants filed their Answer to the

Complaint and Counterclaim (Counterclaim) to Confirm Arbitration Award.  On that same date,

Defendants filed a Motion for Judgment on the Pleadings and a Memorandum in Support

(Memo.), including exhibits.[1]  On May 18, 2006, Mellon filed his "Brief in Opposition re:

Motion for Judgment on the Pleadings" (Opposition or Opp.).  On May 30, 2006, Defendants

filed their Reply Brief to Mellon's Opposition (Reply).

## III.    Factual Background

In 1998, Edward Mellon established the Trust.  At that time, the Trust's sole trustees were

Edward Mellon and David Pollock, an attorney in Pittsburgh.  Pursuant to the Trust agreement,

any income from the Trust would be paid to Edward during his lifetime, and the trustees were

empowered to make all investment decisions for the Trust.  Shortly thereafter, Edward opened an

account with Defendant UBS (Account), with Defendant Otto as the registered representative.

All decisionmaking authority for the Account rested with the trustees.

In March and April 1998, Edward Mellon transferred securities valued at approximately

$8 million into the Account.  Approximately one-quarter of the Account's assets — *i.e.*, $2

---

[1]     Possibly because Mellon captioned his initial pleading "Complaint in the Form of
Motion to Vacate," Defendants responded to that pleading as though it were *both* a
complaint (by filing the Rule 12(c) motion) *and* a motion to vacate (by filing the
counterclaim for confirmation of the Award).

2

million — was comprised of shares of DQE, Inc., the holding company for Duquesne Light Company (DQE). Aside from dividend reinvestments, Edward made only a few trades in the Account between 1998 and 2001. One of these trades was a purchase of additional DQE shares in February 2000 — against Otto's advice — with cash which had accumulated in the Account.

By early 2000, Edward Mellon's total assets — including a $12 million account at Mellon Bank and another $1 million in mutual funds — totaled more than $22 million. UBS did not, however, encourage Edward to retain or increase his holdings in DQE. In fact, on several occasions, Otto and a Mellon Bank trust officer independently recommended that Edward divest himself of some of his holdings in DQE. Each time, however, Edward declined to follow this advice, and retained his shares of DQE in the Trust.

In November 2000, the Trust agreement was amended to replace David Pollock with two new trustees: Richard Mellon, who was Edward's only child, and the Northern Trust Bank of Florida (Northern Trust). Significantly, neither Edward nor the new trustees informed Defendants of this amendment to the Trust agreement. In February 2001, Richard and Northern Trust wrote to UBS requesting that the Account holdings be transferred to Northern Trust. Because UBS had not received documentation showing that Richard and Northern Trust had any power to make this request, however, UBS did not make the transfer until March 2001, when it received proof that Richard and Northern Trust were indeed new trustees of the Account.

By its terms, the Trust terminated in November 2002, when Edward Mellon died. On April 15, 2003, Richard Mellon commenced the arbitration by filing a Statement of Claim against UBS and Otto with the NASD. In the Statement, Mellon contended that Defendants were liable for damages caused by: (1) the continued accumulation of DQE shares in the account; (2)

3

Defendants' failure to sell DQE when its price spiked in early 2000; and (3) Defendants' refusal to transfer the Account assets to Northern Trust until March 2001. Defendants submitted to the NASD arbitration.

Over a five-day span in the summer of 2005 — specifically, on June 27, 28, and 29, and on September 9 and 10, 2005 — a total of nine hearing sessions were held as scheduled before a three-arbitrator NASD panel (Panel). The NASD panelists were Larry A. Feldman, William R. Gruver, and Beth Rackley Hesselson. On August 11, 2005, Mellon raised for the first time the issue of Arbitrator Hesselson's alleged bias in a letter to the NASD. After the NASD promised to investigate, Mellon filed a Motion to Recuse with the Panel on August 22, 2005. Arbitrator Hesselson refused to recuse herself on September 1, 2005. When Mellon again took the issue up with the NASD, the NASD ratified Arbitrator Hesselson's decision, refusing to disqualify her before the final two hearings were held on September 9 and 10, 2005.

On November 15, 2005, the Panel unanimously entered an award against Mellon and in favor of UBS and Otto. More specifically, the Panel denied Mellon's claims in their entirety, denied his request for punitive damages, and recommended the expungement of all reference to the arbitration from Otto's registration records, which were maintained by the NASD Central Registration Depository (CRD).[2] The Panel also denied all requests for attorneys' fees, directed the parties to bear their own costs, and ordered the parties to pay equal shares of the NASD's fees, which totaled $13,200.

---

[2]     The terms of the Award provide that Defendant "Otto must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive." (*See* Mot., Exh. 1, at 3).

4

## IV. Standard of Review

Judicial review of an arbitration award is governed by the Federal Arbitration Act (FAA),

9 U.S.C. §1, *et seq*. Generally speaking, the FAA limits the Court's role to determining "whether

the parties received a fair and honest hearing on a matter within the arbitrator's authority." *See*

*Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 62 (3d Cir. 1986). Section 9 of the FAA

addresses the confirmation of an award and provides, in pertinent part:

> If the parties in their agreement have agreed that a judgment of the
> court shall be entered upon the award made pursuant to the
> arbitration, and shall specify the court, then at any time within one
> year after the award is made any party to the arbitration may apply
> to the court so specified for an order confirming the award, and
> thereupon the court must grant such an order unless the award is
> vacated, modified, or corrected as prescribed in sections 10 and 11
> of this title. If no court is specified in the agreement of the parties,
> then such application may be made to the United States court in
> and for the district within which such award was made.

*See* 9 U.S.C. §9. Where "an award that is questionable nevertheless falls within the broad

discretion granted to arbitrators, it *must be confirmed*." *See Major League Umpires Ass'n v.*

*American League of Professional Baseball Clubs,* 357 F.3d 272, 289 (3d Cir. 2004) (emphasis

added).

When parties do not dispute that the arbitration itself involved a matter within the

arbitrators' authority, as is true in the case at bar, a district court's power to vacate an

arbitration award is quite limited. Pursuant to Section 10 of the FAA, an award may be

vacated:

> (1) Where the award was procured by corruption, fraud, or undue
> means.
>
> (2) Where there was evident partiality or corruption in the

5

arbitrators, or either of them.

> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

> (4) Where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. . . .

*See* 9 U.S.C. §10(a). In addition to these statutory grounds, two common-law grounds permit the *vacatur* of an arbitration award. First, a court may vacate an award if it reveals a manifest disregard of the law. *See Tanoma Mining Co. Inc. v. Local Union No. 1269, United Mine Workers of Am.,* 896 F.2d 745, 749 (3d Cir. 1990). Second, *vacatur* is permitted where an award is "completely irrational." *See Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52, 56 (3d Cir. 1989) (citation omitted).

As the foregoing indicates, a court's role in reviewing an arbitrator's award under the FAA is limited. *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995); *see also Mutual Fire*, 868 F.2d at 56. As long as there is some basis for the arbitrators' decision, no matter how "slender" that basis may be, the award must be confirmed. *See Tanoma Mining*, 896 F.2d at 748. "All that is required is some support in the record." *Id.* Under these standards, a reviewing court should decline to sustain an award "only in the rarest case." *See Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986). Unless a ground for vacating the Award exists, it must be confirmed. *See Bender v. Smith Barney, Harris Upham & Co., Inc.,* 901 F. Supp. 863, 868-69 (D. N.J. 1994) (confirming a NASD award where grounds for *vacatur* did not exist).

6

## V.    Jurisdiction

Mellon invokes federal question jurisdiction pursuant to the Arbitration Act, 9 U.S.C. §1, citing *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995).  He also avers that the Securities Exchange Act of 1934, 15 U.S.C. §78aa, provides an independent basis of federal question jurisdiction.  Finally, Mellon asserts diversity jurisdiction pursuant to 28 U.S.C. §1332. (*See* Mot. at 2-3).

Although Defendants have not challenged Mellon's assertion of these bases of subject matter jurisdiction, "federal courts have the duty . . . where the issue of jurisdiction is not raised by any party, to inquire into their jurisdiction to act and to deny relief where jurisdiction is lacking." *Pharmadyne Laboratories, Inc. v. Kennedy*, 596 F.2d 568, 570 n.3 (3d Cir. 1979) (citations omitted).  Because the pleadings demonstrate that diversity exists, the Court accepts jurisdiction on that basis. *See* 28 U.S.C. §1332.

## VI.   Analysis

Mellon raises three substantive arguments on the merits in support of his request to vacate the Award.  First, he claims that the Award was "irrational" in light of the evidence presented at the hearings. (*See* Mot. at 13-20).  Second, he argues that the Panel improperly refused to hear the testimony of a second expert witness, whose testimony Mellon offered for the first time on rebuttal. (*See* Mot. at 20-23).  Finally, Mellon argues that he was prejudiced by the alleged partiality of Arbitrator Hesselson. (*See* Mot. at 23-34).  Defendants counter all of these arguments, insisting that they are entitled to judgment as a matter of law pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and seek confirmation of the Award in their

7

Counterclaim. (*See* Memo. at 7; *see also* Counterclaim at 12).

Before reaching these substantive arguments, however, the Court must address a procedural issue that Mellon raises. Specifically, Mellon complains that "[t]he transcript of the Arbitration Hearing is only partially available, as the recording device, provided by the NASD to make this record, did not operate properly," a contention that Defendants do not appear to dispute. (*See* Mot. at 11-13; *see also* Memo. at 6 n.6). Although arbitration proceedings are not required to be transcribed by law, *see Dennis v. Wachovia Securities, LLC*, 429 F. Supp.2d 281, 285 (D. Mass. 2006), Mellon points out that Rule 10326 of the NASD Code of Arbitration Procedure required it to keep a record of the proceedings.[3] (*See* Mot. at 12).

Notwithstanding the NASD rule requiring that the proceedings be recorded, the Court rejects the assertion that the incomplete transcript is a ground for *vacatur* of the Award, if indeed that is what Mellon is asserting. Although Mellon insists that this transcription failure "harm[ed]" him, *see* Motion at 12, he does not explain *how*. In these circumstances, the incomplete transcription of the arbitration is not a ground for *vacatur* of the Award.[4] Indeed, it is difficult to imagine how Mellon could be prejudiced where, as here, the parties do not

---

[3]      That rule provides, in pertinent part, that "[a] verbatim record by stenographic reporter or a tape recording of all arbitration hearings shall be kept." *See* NASD Code of Arbitration Proc., Rule 10326(a).

[4]      *See Grosso v. Salomon Smith Barney*, No. 03-MC-115, 2003 WL 22657305, at *7 (E.D. Pa. Oct. 24, 2003) (declining to overturn an arbitration award on the ground that the loss of some of the transcripts had violated NASD Rule 10326, where the appellant noted the loss and claimed prejudice "[w]ithout identifying any evidence or testimony submitted during the time period in issue"), *aff'd* 115 Fed. Appx. 600 (3rd Cir. 2004); *see also Perna v. Barbieri*, No. CIV. 97-5943, 1998 WL 181818, at *2 (E.D. Pa. Apr. 16, 1998), *aff'd*, 176 F.3d 472 (3d Cir.1999) (rejecting the argument that a NASD tape recording was of such poor quality as to frustrate plaintiff's efforts to review proceedings, where the aggrieved party did not demonstrate prejudice).

contest each other's characterizations of the evidence adduced at the hearing. (*Compare*

Memo. at 12 (noting that Mellon had provided "his own recitation of what he purports to be

'examples' of the facts" without disputing any of his factual contentions specifically) *with* Opp.

at 3-6 (failing to contest any portion of Defendants' summary of the facts supporting the

Award).) Nevertheless, to eliminate any prejudice that could possibly exist for either party, the

Court will accept as true *both* Mellon's and UBS's summaries of the evidence introduced at the

arbitration.

Having resolved Mellon's procedural challenge, the Court will consider each of his

substantive attacks on the Award *seriatim*. As will be explained more fully below, the Court

concludes that Mellon has demonstrated no legal basis for upsetting the Award. Accordingly,

the Court will deny his request to vacate the Award and will, instead, confirm it.[5]

### A.     *The Award Is Not Irrational*

Mellon argues that the Award is "irrational" in light of several "examples" of evidence

adduced at the hearing. (*See* Mot. at 13). Defendants contend that the Court is not entitled to

"review selective portions of testimony, evidence, and argument presented to the Panel to

determine if the Panel reached the correct result." (Memo. at 12). In light of the applicable

---

[5]     A motion for judgment on the pleadings pursuant to Rule 12(c) is evaluated under the
same standard as a motion to dismiss pursuant to Rule 12(b). *See Regalbuto v. City of
Philadelphia,* 937 F. Supp. 374, 376-77 (E.D. Pa. 1995), *aff'd,* 91 F.3d 125 (3d Cir.
1996). Like Rule 12(b)(6), Rule 12(c) requires the Court to "accept the allegations in the
complaint as true, and draw all reasonable factual inferences in favor of the plaintiff."
*Turbe v. Gov't of the Virgin Is.,* 938 F.2d 427, 428 (3d Cir. 1991) (citing *Unger v. Nat'l
Residents Matching Program,* 928 F.2d 1392, 1394- 95 (3d Cir. 1991)). Under either
rule, a complaint may be dismissed for failure to state a claim where it appears beyond
any doubt that no relief could be granted under any set of facts which could be proved
consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).
Because the Court will confirm the Award, Defendants' Rule 12(c) motion will be
denied as moot.

9

standard of review, the Court agrees with Defendants.

An award will be deemed irrational and set aside if there is *no* evidence to support it. *See NF&M Corporation v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir. 1975); *H.K. Porter Co., Inc. v. United Saw, File & Steel Products Workers of America*, 333 F.2d 596 (3d Cir. 1964). Put another way, an award is not irrational as long as there is *any* evidence to support it. *See Kane Gas Light and Heating Co. v. International Broth. of Firemen and Oilers, Local 112*, 687 F.2d 673, 679 n.8 (3d Cir. 1982) (declining to overturn an award where "we cannot say that there was no evidence supporting the arbitrator's conclusion"); *see also Conn v. U.S. Steel*, 667 F. Supp. 204, 206 (E.D. Pa. 1987) (explaining that, as long as there is some evidence in the record to support an arbitrator's findings, those findings are not irrational).

The unforgiving operation of this legal standard cannot be overstated. The *vacatur* of an award is allowed only if there is "absolutely no support at all in the record justifying the arbitrator's determinations." *See United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (citation omitted); *see also Mutual Fire*, 868 F.2d at 56 (explaining that only if the terms of the award are "completely irrational" will it be subject to judicial revision or *vacatur*); *Daugherty v. Washington Square Securities, Inc.*, 271 F. Supp.2d 681, 694 (W.D. Pa. 2003) (same). As should be obvious from the foregoing, a court may not overrule an arbitrator "simply because it disagrees" with the arbitrator's interpretation of the law. *See United Transp. Union Local 1589*, 51 F.3d at 579. Even where the support is "slender," as long as the record reveals "some basis for the arbitrator's conclusion . . . the inquiry is over." *Tanoma Mining*, 896 F.2d at 748.

10

Against the backdrop of this difficult standard, Mellon cites selected "examples" of the evidence adduced at the hearing for the proposition that the Award was "irrational." (*See* Mot. at 13-20). Succinctly, he argues that the evidence at the arbitration demonstrated that, despite the fact that Edward Mellon's mental condition began to deteriorate toward the end of his life, Defendant Otto did not inquire into his competency and continued to buy DQE holdings for the Trust, while UBS did not inquire of Otto why Edward continued to purchase shares of DQE and delayed the transfer of the Trust corpus to Northern Trust. (*See* Mot. at 13-20). Even accepting all of Mellon's contentions about the content of the record developed at the arbitration, the Court concludes that he has not met his burden of showing that the Panel behaved irrationally in ruling as it did.

After reviewing as much of the record as survived the technical difficulties at the NASD hearing, and in light of the representations the parties have made about the other evidence introduced at the arbitration, the Court is confident that at least some evidence supported the Award: and again, the presence of *any* evidence is conclusive for the purposes of this review. *See United Transp. Union Local 1589,* 51 F.3d at 379; *see also Tanoma Mining*, 896 F.2d at 748; *Kane Gas Light,* 687 F.2d at 679 n.8. Specifically, Defendants aver that the record contained evidence that Edward Mellon was a savvy investor who, despite Otto's repeated recommendations that he divest himself of some of his stock in DQE, continued to buy DQE shares and made Richard Mellon a trustee without informing Defendants he had done so. (*See* Memo. at 5-6). Although most of the transcript is missing, Mellon does not dispute Defendants' summarization of the evidence supporting the Award. (*See generally* Opposition). The evidence that Defendants cite permitted the Panel to find that any losses to the Trust were

11

caused by Edward's deliberate actions and inactions, and not by any breach of duty on Defendants' part. Accordingly, Mellon has not demonstrated that the Panel's result was irrational, and "the inquiry is over." *See Tanoma Mining,* 896 F.2d at 748.

In light of Defendants' uncontradicted characterization of the record that the Panel relied upon in reaching its result, Mellon's showing of "irrationality" is nothing more than a summary of evidence which could have supported a different outcome. (*See* Mot. at 13-20). Significantly, although Mellon ultimately argues that the Panel "acted in a manifest disregard of the law, *and of the facts,*" (*see* Mot. at 32 (emphasis added)), he does not identify any law that, in his view, the Award disregards. (*See* Memo. at 12; *see also* Mot. at 13-20). Instead, he confines his attack on the Award to the contention that it disregards "the facts," *i.e.,* that it is "irrational [. . .] when taken from the standpoint of the evidence adduced at the hearing." (*See* Mot. at 13). Putting aside the problem this approach presents — for it is exactly the opposite of the standard that the Court applies[6] — and although Mellon does not explain how he thinks his list of facts shows the Award to be "irrational," one of two possibilities exists: either he believes the Panel ascribed *insufficient weight* to the evidence he offered, or that Defendants offered *insufficient evidence* to support the Award.

Even assuming for the sake of argument that Mellon is right on both counts, the Court could not vacate the Award. Federal courts "do not sit to hear claims *of factual or legal error* by an arbitrator as an appellate court does in reviewing decisions of lower courts." *See Tanoma*

---

[6]     As another district court in our Circuit recently has observed, "the court's function is to preserve and enforce the arbitration decision unless there is proof that — *aside from the evidence presented* — the decision was arrived at illegally or irregularly." *See Perna,* 1998 WL 181818 at *3 (emphasis added).

*Mining,* 896 F.2d at 747 (emphasis added); *see also Wilko v. Swan,* 346 U.S. 427, 436-37

(1953). Thus, a court may not reweigh the evidence under the guise of determining whether the

Panel's decision was irrational. *See Mutual Fire,* 868 F.2d at 56. Nor does a review for

"irrationality" permit an inquiry into the sufficiency of the evidence supporting a decision. *See*

*Kaplan,* 19 F.3d at 1520 (distinguishing between "manifest disregard" review and a review of

the sufficiency of the evidence), *see also Coltec Industries, Inc. v. Elliott Turbocharger Group,*

*Inc.,* Nos. CIV. A. 99-1400, 99-MC-36, 1999 WL 695870, at *5 (E.D. Pa. Sept. 9, 1999)

(explaining that the court is "precluded" from reviewing "the sufficiency of the evidence in

support of the arbitrator's findings and legal conclusions in the award and reach[ing] a different

result" under the guise of performing a review for "manifest disregard").

In the end, Mellon "has done nothing more than allege facts which would allow [the

Court] to disagree with the arbitrator[s'] decision." *See McLaughlin, Piven, Vogel, Inc. v.*

*Gross,* 699 F. Supp. 55, 58 (E.D. Pa. 1988). But findings of fact and the inferences to be drawn

therefrom are the exclusive province of the arbitrator. *See Exxon Shipping Co. v. Exxon*

*Seamen's Union,* 73 F.3d 1287, 1297 (3d Cir. 1996) (citation omitted). As such, and because

there is no dispute that there was at least some evidence to support the Panel's decision, Mellon

has not shown that the Award was irrational. *See id.* "The fact that this Court might not have

made the same findings as the [Panel] or might not have evaluated the evidence as [it] did is

not a sufficient basis to overturn an arbitration award as long as the arbitrator[s] stayed within

the confines of the agreement." *See Equitable Gas Co. v. United Steelworkers of America,*

*AFL-CIO-CLC,* 676 F. Supp. 648, 652 (W.D. Pa. 1987). Mellon argues that *a rational Panel*

*could have* seen things his way, but he does not show that *only an irrational Panel would have*

13

seen things any other way. Since the latter — and not the former — is what Mellon must show, the Court rejects his common-law challenge to the Award.

### B.     The Panel's Refusal to Hear the Testimony of a Rebuttal Expert

Mellon next argues that the Award should be vacated because the Panel refused to permit him to present expert testimony from Mr. Peter Elish to rebut the testimony presented by Defendants' expert. (*See* Mot. at 20-23). Defendants disagree, and contend that the Panel properly excluded the testimony of Mr. Elish, which would have served only to revisit and rehabilitate the damaging testimony given by one Mr. Miles: an expert whose testimony Mellon presented in its case-in-chief.[7] (*See* Memo. at 14-15 and n.10). After reviewing the pleadings and the record, the Court agrees with Defendants.

An award may be vacated if the arbitrator "refus[es] to hear evidence pertinent and material to the controversy." *See* 9 U.S.C. §10(a)(3). The NASD Code of Arbitration gives the arbitrators wide discretion to determine which evidence is "pertinent" or "material." Specifically, Section 10323 states that "[t]he arbitrators shall determine the materiality and relevance of any evidence proffered and shall not be bound by rules governing the admissibility of evidence." *See* NASD Code of Arbitration Proc. Rule 10323 (quoted in *Maiocco v. Greenway Capital Corp.,* No. CIV-A 97-MC-0053, 1998 WL 48557, at \*7 (E.D. Pa. Feb. 2, 1998)).

---

[7]     Because the testimony of Mr. Miles did not survive the technical glitch that resulted in the inaudibility of most of the hearing cassettes, and because the parties have not given the Court any more specific information about the identity of this witness, the Court will refer to him throughout this Memorandum Opinion as "Mr. Miles."

14

Consistent with this discretion, "[i]n an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen." *Newark Stereotypers' Union v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3d Cir. 1968). Thus, *vacatur* is appropriate under Section 10(a)(3) only when the arbitrators' refusal to hear testimony "so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Hasbro, Inc. v. Amron,* 419 F. Supp.2d 678, 687 (E.D. Pa. 2006) (quoting *Newark Stereotypers' Union No. 18,* 397 F.2d at 599). In the final analysis, the aggrieved party must show that the arbitrators' refusal to hear his evidence prejudiced him. *See* 9 U.S.C. §10(a)(3).

Here, the record reflects that the Panel considered Mellon's request to permit Mr. Elish to testify in rebuttal. *(See* Mot., Exh. 2 at 29-38). After hearing the offer of proof as to Mr. Elish's proposed testimony, Defendants argued that Mellon was offering Mr. Elish to "put on the same points he addressed under direct examination [of Miles]," and urged the Panel not to give Mellon "a second bite at the apple by having put on Mr. Miles[,] who was an absolute disgrace of a witness, and come back with someone who they [*sic*] perhaps have since found to be more credible, at least on paper." *(See* Mot., Exh. 2 at 39-40). After taking a recess to have a "long discussion" amongst themselves about the matter, the arbitrators denied the request on the ground that none of the proposed testimony was proper for rebuttal. *(See* Mot., Exh. 2 at 40-42).

In these circumstances, the Court cannot conclude that the Panel's decision to exclude the proffered rebuttal testimony was even erroneous, let alone that it denied Mellon a fair hearing. *See Hasbro,* 419 F. Supp.2d at 687. The NASD rules permit exclusion of evidence

15

which appeared to be cumulative of other evidence already in the record. *See* NASD Code of

Arbitration Proc. Rule 10323; *see also Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1017

(11th Cir. 1998) ("An arbitrator need not consider all the evidence the parties seek to introduce

but may reject evidence that is cumulative or irrelevant."). Significantly, Mellon made no

effort at the hearing to refute Defendants' contention that this testimony was, in fact,

cumulative of that offered by Mr. Miles, the expert Mellon offered in his case-in-chief. (*See*

Mot., Exh. 2 at 31-38). Indeed, although Mellon's briefing in this Court recapitulates his offer

of proof as to the relevancy of Mr. Elish's proposed testimony, even now he makes no effort to

refute Defendants' contention that this testimony would have been superfluous in light of what

Mr. Miles already had testified. (*See* Mot. at 20-21).

In sum, Mellon makes no effort to show that the proffered rebuttal testimony of Mr.

Elish was anything but what Defendants claim it is: an improper and cumulative attempt to

rehabilitate the testimony of Mr. Miles, the expert who testified in Mellon's own case-in-chief.

Because the Panel had discretion to exclude such testimony, and because Mellon has not

explained how the Panel's decision to exclude this cumulative evidence prejudiced him, *see* 9

U.S.C. §10(a)(3), the Court finds that the Panel's decision to exclude this proposed testimony

does not justify *vacatur* of the Award.

## C.     *Alleged Bias of One of the Three Panel Arbitrators*

In his final argument, Mellon claims that, because of her alleged "bias" and "attention

problems" on the last day of the arbitration, Arbitrator Hesselson's failure to recuse herself

entitles him to a *vacatur* of the Award. (*See* Mot. at 23-34). Defendants argue that Mellon has

not met his burden of demonstrating evident partiality. (*See* Memo. at 16-19). The Court

16

concludes that Mellon cannot show that Arbitrator Hesselson was biased or inattentive, or that her participation in the arbitration prejudiced him.

The party challenging the arbitration decision has the burden of showing "evident partiality." *See* 9 U.S.C. §10(a)(2); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145, 147 (quoting 9 U.S.C. §10). What constitutes "evident partiality" remains somewhat nebulous. Although there is some debate whether "evident partiality" must be shown by proof of "actual bias," or merely an "appearance of bias," *see Crow Constr. Co. v. Jeffrey M. Brown Assoc., Inc.,* 264 F. Supp.2d 217, 220-24 (E.D. Pa. 2003), the Third Circuit arguably adopted an "actual bias" standard when it stated in *Kaplan* that, "[i]n order to show 'evident partiality,' the challenging party must show [that] a reasonable person would have to conclude that the arbitrator was partial to the other party in the arbitration." *See Kaplan,* 19 F.3d 1503, 1523 n.30 (citation and internal quotation marks omitted). *Kaplan* further observed that "'[e]vident partiality' is strong language and requires proof of circumstances powerfully suggestive of bias." *Id.* Even applying the more generous "appearance of bias" standard, and even assuming *arguendo* that Mellon's allegations enjoyed full evidentiary support, they would not justify vacating the Award, however.

Mellon has not alleged that any of the arbitrators had a pecuniary interest or any other personal stake in the outcome of the case. Instead, Mellon's claim of bias focuses on two points, both of which are directed solely at Arbitrator Hesselson. First, Mellon complains about derogatory comments that Arbitrator Hesselson supposedly made about his counsel during a prior arbitration in a different matter; second, he alleges that Arbitrator Hesselson displayed an unspecified "attention problem" during the last day of Mellon's arbitration. (*See*

17

Mot. at 24-28). As a threshold matter, the Court observes that Mellon offers no evidence — other than his *ipse dixit* — that Arbitrator Hesselson either made derogatory comments about his counsel at a separate arbitration, or that she was inattentive during Mellon's arbitration. (*See* Mot. at 24-30).

But even if Mellon could provide some evidence that Arbitrator Hesselson made these comments about his counsel, "[a]crimony or negative feelings between the arbitrators and a party's attorneys do not indicate an appearance of bias, much less the evident partiality required to vacate an award." *See LLT Intern. Inc. v. MCI Telecommunications Corp.*, 18 F. Supp.2d 349, 354 (S.D.N.Y. 1998) (citation and internal quotation marks omitted). This principle is reinforced by the fact that Arbitrator Hesselson is not alleged to have been biased against *Mellon* (as opposed to his counsel), or *this* arbitration (as opposed to an entirely separate arbitration). Thus, supposing Mellon could prove that Arbitrator Hesselson "made disparaging remarks about how [Mellon's counsel] was conducting his interrogations of witnesses" during an entirely separate arbitration, (*see* Motion at 24), that evidence would not even create the appearance of bias — let alone persuade the Court that any alleged prior strife between Arbitrator Hesselson and Mellon's counsel affected this arbitration.

Likewise unavailing is Mellon's contention that Arbitrator Hesselson displayed an "attention problem" during the final day of the arbitration, (*see* Motion at 27-28), which allegation appears to fall under the category of "other misbehavior" rather than "evident partiality." *See* 9 U.S.C. §10(a)(3). Even if there were some evidentiary support for this allegation, the Court could not vacate the Award on that basis. *See Forsythe Intern., S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1021-23 (5th Cir. 1990) (upholding an arbitrator's decision

18

despite clear evidence of arbitrator inattention and refusal by the panel to hear certain

evidence); *see also Velasco v. Beth Israel Medical Center,* 279 F. Supp.2d 333, 337 (S.D.N.Y.

2003) (holding that a party's allegation that the arbitrator was "not paying attention to the

arbitration proceeding," even if true, would not establish bias).

These conclusions are reinforced by the apparent harmlessness of any alleged bias or

misconduct by Arbitrator Hesselson. Significantly, Mellon does not contend that either of the

other two arbitrators was biased against him; indeed, he admits that he had "no objection to the

remainder of the Panel" hearing the matter. (*See* Mot. at 25-26). This concession, when

considered in light of the unanimity of the Panel's ultimate decision, means that Arbitrator

Hesselson was — even if biased or inattentive — entirely immaterial to the result. *See*

*Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.,* 256 F. Supp.2d 594,

628 (S.D. Tex. 2002) (finding that the alleged bias of one arbitrator on a unanimous three-

arbitrator panel was not prejudicial where the plaintiff "has not alleged any wrongdoing by the

other two members of the panel.").

In light of the foregoing, the Court concludes that Mellon has not demonstrated

partiality under either the "actual bias" standard articulated in *Kaplan*, or the more generous

"appearance of bias" standard adopted in other circuits. Thus, the Court concludes that the

alleged bias of Arbitrator Hesselson does not warrant *vacatur* of the Award. *See* 9 U.S.C.

§10(a)(2) and (3).

19

## VII.   Conclusion

For all the foregoing reasons, Plaintiff Mellon has not carried his heavy burden of

showing that the arbitration award should be vacated. Accordingly, the Court will deny

Plaintiff's Motion to Vacate, grant Defendants' Counterclaim, and confirm the Award.[8]

An appropriate Order follows.


Thos M. Hardiman

Thomas M. Hardiman
United States District Judge


Dated:   November 6, 2006

---

[8]     To the extent that Defendants' Motion for Judgment on the Pleadings seeks the same
relief as their Counterclaim, the Court's confirmation of the Award moots the Rule 12(c)
motion. *See Grosso*, 2003 WL 22657305, at *9 (confirming an arbitration award and
denying all other motions as moot). Defendants' request for sanctions, which appears in
their Rule 12(c) motion but not in the Counterclaim, will be denied. *See Virgin Islands
Housing Authority v. Coastal General Const. Services Corp.,* 27 F.3d 911, 917 (3d Cir.
1994) (declining to sanction a party who challenged an arbitration award in district
court).

20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE EDWARD MELLON TRUST, by and through Trustee, M. RICHARD MELLON, | ) ) |
| | ) No. 2:06-cv-0184 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Thomas M. Hardiman |
| | ) |
| UBS PAINEWEBBER, INC. and GARY LYON OTTO, | ) ) |
| | ) |

Defendants.

## ORDER

AND NOW this 6th day of November, 2006 upon consideration of Plaintiff's Complaint

in the Form of Motion to Vacate Arbitration Award (Doc. No. 2) and Defendants' Answer to

Complaint and Counterclaim to Confirm Arbitration Award (Doc. No. 7), it is hereby

ORDERED that Plaintiff's Motion is DENIED, Defendants' Counterclaim is

GRANTED, and the NASD arbitration award entered in favor of Defendants is CONFIRMED.

It is further

ORDERED that Defendants' request for sanctions is DENIED and Defendants' Motion

for Judgment on the Pleadings (Doc. No. 8) is DENIED AS MOOT. It is further

ORDERED that Plaintiff's Complaint is DISMISSED, and the Clerk is directed to mark

this case CLOSED.

BY THE COURT:

*Thos M. Hardiman*

Thomas M. Hardiman
United States District Judge